# First National Bank of Reading *v.* Ferguson, Appellant.

*Bailment—Pledge of stock—Impairment of value—Banks and bank-
ing—Corporation.*

Where a national bank owning the majority of the stock of a cor-
poration accepts as collateral from a debtor other stock of the same
company, and subsequently the entire value of the stock is destroyed
in consequence of a change in the business made by the directors
prior to the pledge, the bank may recover its debts from the debtor,
although it could have prevented the change in business, but honestly
failed to do so.

Argued March 1, 1909.  Appeal, No. 314, Jan. T., 1908, by
defendant, from order of C. P. Berks Co., Aug. T., 1908,
No. 51, making absolute rule for judgment for want of a suf-
ficient affidavit of defense in case of First National Bank of
Reading v. Nathaniel Ferguson.  Before FELL, BROWN, MES-
TREZAT, POTTER and STEWART, JJ.  Affirmed.

Assumpsit on a promissory note.

Rule for judgment for want of a sufficient affidavit of de-
fense.

ENDLICH, P. J., filed the following opinion:

Conceding the general principle upon which the defense set

up in this case is claimed to be founded—that if collateral in the hands of the creditor is impaired in value through the creditor's negligence he is liable to the pledgor to the extent of the loss—it is impossible to perceive how it can be applied to the facts alleged in this affidavit. On October 24, 1907, defendant became indebted to plaintiff upon a note for $2,500, payable February 24, 1908. As collateral security he pledged to the plaintiff seventy shares of the preferred stock of the Keystone Wagon Works, a corporation the majority of whose stock was owned by the plaintiff, and which the plaintiff had been instrumental in organizing in order to protect itself against loss upon heavy advances made by it to the Keystone Wagon Company. Prior to February, 1907, the wagon works had built up and was doing a profitable business manufacturing wagons. About that time, against the defendant's protest, this business was abandoned and that of manufacturing metal bodies for automobiles entered upon. The departure proved disastrous, so that the stock pledged by defendant to plaintiff became worthless, entailing upon him a loss greater than the amount of his indebtedness to plaintiff. Whilst the affidavit declares that the plaintiff made the change that wrecked the wagon works, it does not allege or point to any corporate act on the part of the plaintiff corporation as in any way directing or connected with it. What is meant is obviously to be gathered from the averment that the plaintiff owning the majority of the stock was, as such stockholder, through the majority of the directors of the wagon works, in control of its business and affairs. After all the change was brought about by the action of the management of the wagon works, and the most that can be charged against the plaintiff, according to this affidavit is, that it did not exercise its influence upon the management to prevent the change. It is not asserted that the failure to do so was actuated by any fraud or wrongful purpose, much less by any design to depress or destroy the value of the collateral pledged by defendant (which might be a defense: see Ritchie v. McMullen, 79 Fed. Repr. 522). The question thus presented is therefore simply this, whether a stockholder in a company who accepts as collateral from his debtor other

stock of the same company loses his debt by the destruction of the value of the entire stock of the company consequent upon the action of its directors which he was in a position, but honestly failed to prevent?  There can be but one answer. The plaintiff could not be expected as pledgee of defendant's stock to understand the interests of the company differently from what be understood them as a stockholder.  In assenting as a stockholder, honestly, however mistakenly, to a change in the business of the company by its directors, the plaintiff certainly did not make itself liable to defendant for the loss resulting to him in common with it and all other stockholders in proportion to their holdings.

But in addition to this, the change of business had been made long before the plaintiff became the holder of defendant's stock as collateral security.  The improvidence or negligence he imputes to it antedated by eight months the inception of the relation of pledgee and pledgor, trustee and cestui qui trust.  There is nothing in the affidavit indicating any act or omission on plaintiff's part entitling defendant to redress after the defendant's stock came into plaintiff's hands.  There is therefore nothing alleged which, in any view, could ground a defense in this action.  To go behind the date of the pledge and hold the defendant entitled to a release from his debt by reason of the injury resulting to him from plaintiff's previous acts and omissions would be to hold the plaintiff responsible to defendant for the consequences of what it did, not as the bailee of defendant's, but as the owner of its own stock.  Of course that cannot be, because in what plaintiff did or did not do as a stockholder in the wagon works it was dealing with its own and not accountable to the defendant by reason of any privity between them.

Notwithstanding the earnest and interesting argument made in behalf of the defendant, there seems to be no choice but to enter the judgment demanded by the plaintiff.

The rule to show cause is made absolute.

*Error assigned* was order making absolute rule for judgment for want of a sufficient affidavit of defense.

C. H. Ruhl, with him Richmond L. Jones, for appellant.

J. Bennett Nolan, for appellee.

Per Curiam, April 12, 1909:
The judgment is affirmed on Judge Endlich's opinion.